Louis GREENSPON, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent
(three cases).

Anna GREENSPON, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

Nos. 15391–15394.

United States Court of Appeals
Eighth Circuit.

Feb. 2, 1956.

Max Bloomstein, Jr., Chicago, Ill. (Edmond S. Sager and Johnston, Thompson, Raymond & Mayer, Chicago, Ill., were with him on the brief), for petitioners.

Melva M. Graney, Atty., Dept. of Justice (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Atty., Dept. of Justice, were with her on the brief), for respondent.

Before SANBORN, JOHNSEN, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The four cases involved, consolidated for trial in the Tax Court and here, are before us on petitions for review of the decisions of the Tax Court (opinion reported at 23 T.C. 138 [1]). This court

I. The following is a summary of the amount of deficiency in each case as determined by the Tax Court:

| Case No. | Petitioner | Year | Amount of Deficiency |
|---|---|---|---|
| 15391 | Louis Greenspon (transferee) | 1946 | $ 2,382.51 |
| 15392 | Anna Greenspon | 1947 | 25,030.17 |
| 15393 | Louis Greenspon | 1947 | 30,967.79 |
| | | 1948 | 24,779.40 |
| | | 1949 | 8,873.12 |
| 15394 | Louis Greenspon, Inc. | 1947 | 924.56 |
| | | 1948 | 1,546.30 |
| | | 1949 | 559.10 |

has jurisdiction to consider said petitions under section 7482 of the Internal Revenue Code of 1954, 26 U.S.C. § 7482.

These appeals arise from the decisions of the Tax Court denying the taxpayers' capital gains treatment on the profits realized upon the liquidation of industrial pipe, and rejecting claims of taxpayers for deduction of certain promotional expenses. These issues are labeled by the parties as "Capital Gains Issue" and "Promotional Expense Issue." The parties in their briefs consolidate their arguments upon all of these appeals, rather than argue the cases separately, stating that this method of presentation will facilitate the disposition of the questions before the court. We shall follow this pattern in our discussion.

 The decisions of the Tax Court are to be reviewed in the same manner as the decisions of the district courts in civil actions tried without a jury. § 7482, Internal Revenue Code of 1954; Rule 52 (a), Federal Rules of Civil Procedure, 28 U.S.C. Findings of fact by the Tax Court are not binding upon this court if there is no substantial evidence to sustain them, if they are against the clear weight of the evidence, or if they are induced by an erroneous view of the law. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L. Ed. 746; Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525; Marcella v. Commissioner, 8 Cir., 222 F.2d 878; Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136; Smith v. Dunn, 5 Cir., 224 F.2d 353; Galena Oaks Corp. v. Scofield, 5 Cir., 218 F.2d 217.

We now look to see whether there is sufficient evidence to sustain the Tax Court's findings, and whether the law was properly applied to the established facts.

### Capital Gains Issue

The petitioners, Louis and Anna Greenspon, who will also be referred to jointly herein as taxpayers, contend that the Tax Court erred in its determination that the profit derived from the sale of pipe, which had been distributed in kind to taxpayers on complete liquidation of a corporation, was taxable as ordinary income rather than as capital gain. The pertinent facts on this issue will be reviewed.

Louis Greenspon and his sister-in-law, Anna Greenspon, each owned 50 per cent of the stock of the Joseph Greenspon's Son Pipe Corporation, hereinafter called the old corporation, a Missouri corporation organized in 1932, which carried on the business of buying industrial pipe, reconditioning and fabricating same, and selling the pipe. Louis Greenspon was president and manager and principal salesman of the old corporation. Serious discord developed between Louis and Anna, which resulted in their decision to liquidate the old corporation at the end of the year 1946. There is substantial evidence that the old corporation was dissolved because of the intense animosity which had arisen between the taxpayers. Since the good faith of the dissolution is not questioned by either the Commissioner or the Tax Court, no purpose will be served in going further into the nature of the taxpayers' difficulties between themselves. The old corporation was dissolved on December 31, 1946, and the remaining assets were then distributed to the taxpayers in kind. Included in the assets turned over to the taxpayers was a stock of pipe. The issue of ordinary income or capital gain arises with reference to the profit realized in the sale of this pipe. No dispute as to the valuation placed upon this pipe at the time of liquidation is involved. The pipe was largely used pipe. It was in odd sizes and had thin walls. Not more than three per cent of it conformed to standard specifications. Included also were odds and ends that had accumulated over many years. The pipe acquired in liquidation was sold under the name of Louis and Anna Greenspon, Liquidating Agents. The sales were made by Louis, the purchasers being the end-users, many of whom had done previous business with the old corporation. All the pipe involved was either on hand or had

been ordered before the liquidation, except for one purchase of $75 to fill out an order. The Tax Court attaches no significance to this small purchase. The Tax Court in its findings of fact states:

"To obtain the best price for the pipe received from the dissolved corporation, it was necessary to sell it to the company which would actually use it, the so-called 'end-user.' If the pipe had been dumped in one lot on the market, it would have been classified generally as junk and would have brought very low prices. Consequently, disposition of the pipe was made in a series of sales extending from the beginning of 1947 through the end of 1948. One hundred and six sales were made during the first six months of 1947, 21 sales during the last six months of 1947, and 11 sales during 1948."

The liquidators maintained neither plant nor office after June 1947. The number of employees was gradually reduced from 26 in December 1946 to none in July 1947, the necessary labor of loading orders being performed by contract. No contention is made that the taxpayers did not liquidate the pipe as expeditiously as possible under the circumstances. The sales made during the first six months of 1947 totaled $399,990.98, on which short term capital gains were reported which carried the same tax liability as ordinary income. The sales for the last half of 1947 amounting to $179,710.72 and for 1948 amounting to $135,620.71 were accounted for by the taxpayers on the basis of long term capital gains. The liquidation of the pipe was completed in 1948.

Early in 1947 Louis Greenspon formed Louis Greenspon, Inc., of which he owned 99.6 per cent of the stock. About the same time Anna Greenspon's husband organized a new corporation. Each of such new corporations was engaged in the same line of business as the old corporation, but neither corporation owned any of the pipe involved in these cases.

Section 117(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C. § 117(a) (1) (A) provides:

"§ 117. *Capital gains and losses*

"(a) *Definitions.* As used in this chapter—

"(1) *Capital assets.* The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business) but does not include—

"(A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business".

The decisive question upon the capital gains issue is whether the liquidation was handled in such a way as to exclude it from the benefit of the capital gains treatment under the exclusionary provisions of section 117(a) (1) (A), hereinabove. The Tax Court thus states the controlling issue:

"Therefore, while it may be admitted that the purpose of the partnership 'Louis and Anna' was to liquidate the pipe which had been distributed to the partners when their corporation was dissolved, we are nevertheless required to examine the manner in which they disposed of the pipe to determine whether the operation constituted a trade or business, and whether the pipe was held for sale to customers in the ordinary course of a trade or business."

The conclusion of the Tax Court upon this issue is:

"In summary, when all the facts are considered, we think they show that the partnership 'Louis and Anna Greenspon' was essentially a business enterprise and that the pipe sold by the partnership was held for sale in the ordinary course of the partnership business. The details stressed by the petitioners such as the lack of purchases and the gradual tapering off of the number of employees and the sales, while im-

portant considerations to be taken into account, are not sufficient to change our opinion. When the whole record is viewed, we think it is inescapable that the partnership was as much a business as was the corporation it succeeded and the proceeds from the sale of pipe by the partnership were as much the proceeds from the sale of stock in trade as were the sales of pipe by the corporation."

The Tax Court found that the liquidating agents formed a partnership to dispose of the pipe. It relies principally upon the fact that returns for 1947 and 1948 were made out on Form 1065 labeled "Partnership Return." However, on the return, under the name of organization, appears "Louis and Anna Greenspon as Liquidating Agents." Under 26 U.S.C. § 3797, the term "partnership" is given a broad definition, and includes syndicate, group, pool, joint venture, and some other unincorporated organizations. The fact that the liquidating agents filed the returns on the partnership form is of little significance. Many organizations that do not constitute a partnership make use of the so-called partnership return. A partnership is a relationship arising out of a partnership contract. A necessary element of such a contract is the intent of the parties to create the partnership relationship. In 68 C.J.S., Partnership, § 10, it is stated:

"The court, in determining whether or not a particular contract or transaction constitutes a partnership as between the parties thereto, will seek to ascertain their intention as disclosed by the entire transaction. * * *"

See also Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659.

■ We do not believe that the evidence in these cases warrants a finding that the taxpayers intended to be partners. The purpose of the liquidation was to sever, not to establish, a business relationship. Taxpayers did not want to enter into business. They desired to dispose of any jointly owned property as expeditiously as possible. More than joint ownership of property and desire to liquidate the joint ownership are required to create a partnership.

■ The Tax Court also takes the position that the fact that no new stock was acquired by the liquidating agents is unimportant because Louis Greenspon in his new corporation was building up an inventory of similar merchandise. A corporation is an entity separate and distinct from its individual stockholders. We can see no basis for drawing any inference that the liquidating agents were building up an inventory merely because a corporation largely owned by one of the agents was acquiring new stock. As hereinabove noted, at the time of the liquidation Anna Greenspon and Louis Greenspon were each interested in separate and distinct competing companies in the pipe business.

Most of the cases cited by the parties on the capital gains issue are cases involving real estate sales. Both parties urge that the principles stated in the cases on which they rely should also apply to personal property. We agree that what is said in the real estate cases with reference to property held primarily for sale to customers in the ordinary course of business is applicable to situations involving personal property. There are many reported cases which discuss the question of whether liquidation is a business. In general, the courts take the position that each case must be determined upon its particular facts, and that no definite formula for deciding cases of this type can be prescribed. Among the cases holding that the method of liquidation used in the particular case would not deprive the taxpayer of the right to capital gains treatment are: Dillon v. Commissioner, 8 Cir., 213 F.2d 218; Chandler v. United States, 7 Cir., 226 F.2d 403; Smith v. Dunn, supra; Goldberg v. Commissioner, 5 Cir., 223 F.2d 709; McGah v. Commissioner, 9 Cir., 210 F.2d 769; Victory Housing No. 2 v. Commissioner, 10 Cir., 205 F.2d 371; Three

States Lumber Co. v. Commissioner, 7 Cir., 158 F.2d 61; United States v. Robinson, 5 Cir., 129 F.2d 297; Garrett v. United States, 128 Ct.Cl. 100, 120 F. Supp. 193; Boomhower v. United States, D.C.N.D.Iowa, 74 F.Supp. 997; In re Estate of Jacques Ferber, 22 T.C. 261. There are also cases reaching the contrary conclusion, such as Richards v. Commissioner, 9 Cir., 81 F.2d 369, and Ehrman v. Commissioner, 9 Cir., 120 F.2d 607, relied upon by the Tax Court, and cases cited by the Commissioner, among them, Palos Verdes Corp. v. United States, 9 Cir., 201 F.2d 256; Rollingwood Corp. v. Commissioner, 9 Cir., 190 F.2d 263; Brown v. Commissioner, 5 Cir., 143 F.2d 468; Snell v. Commissioner, 5 Cir., 97 F.2d 891.

The apparent conflict in the lines of cases hereinabove cited can perhaps in some instances be explained on the basis of factual differences. There also appear to be differences in the law applied. It would be impossible to reconcile all the conflicting decisions and, since the factual situation presented by the particular case is the important and controlling factor, little would be accomplished by discussing the many cases in detail. On the whole, the cases denying the capital gains treatment appear to do so on the basis of finding a few similarities between the way in which the liquidation was conducted and the manner in which business is ordinarily conducted. Apparently, such method was used by the Tax Court. On the other hand, it would seem that in general the cases permitting capital gains treatment reached that result after a more thorough and complete survey of the entire factual situation.

In the very recent case of Chandler v. United States, supra, the taxpayers had received a vast amount of land in payment for building construction. This land was placed in trust with the object of converting the land into cash. From 1942 to 1950, the tax period in dispute, 290,000 acres of land were sold in 536 separate transactions. It was held that the capital gains treatment should be accorded; that the liquidation was not of property held by the taxpayers for sale to customers in the ordinary course of business. The Government strenuously urged that the piecemeal liquidation put the taxpayers in the real estate business. In answer to this the court states, 226 F.2d at page 406:

"Had the lands been sold in a single unit there probably would have been slight debate concerning their capital asset status. But the market place is hardly glutted with prospective buyers clamoring for million acre tracts. It seems odd to penalize this taxpayer because it actively sought to dispose of these holdings. Defendant would insist that Capitol sit idle, wishing for a buyer or buyers, under the threat that any selling effort would result in deprivation of capital asset treatment. Despite the blurring, in relevant precedent, between capital gain and ordinary income we think the specific facts established in this case warrant capital gain treatment for taxpayer's transactions. * * *"

Elsewhere the court says, 226 F.2d at pages 405–406:

" * * * Resort to dictionary definitions of such words as 'ordinary,' 'trade' and 'business,' as expected, are little aid here. Nor can any workable formula be developed which will show what quantum of commercial activity equals 'business.' * * *"

This court's nearest approach to our present problem was in Dillon v. Commissioner, supra. There we held that the sale for purposes of liquidation of 20 houses originally held for rental by separate sales did not place the taxpayer in the real estate business, and that the taxpayer was entitled to the benefit of the capital gains provision.

We agree with the cases that hold that there should be a full appraisal of all facts and circumstances disclosed by the evidence in making the determination of whether the liquidation was of property held by the taxpayer primarily

for sale to customers in the ordinary course of his trade or business.

Here, the liquidation was unquestionably in good faith. The pipe came into the hands of the liquidating agents as capital assets. It is obvious that due to the nature of the assets they could not be liquidated without great loss in any other manner than that adopted here. The pipe was sold in the name of the liquidating agents. No office was maintained. All employees were released. There was no extensive advertising in connection with the sales, nor was there any extensive sales promotion. The stock was not replenished. The sales were made by Louis Greenspon, one of the liquidating agents. There was no intent on the part of the owners to jointly engage in business. Their intent was to liquidate and sever their relationship. Each was interested in a new competing corporation.

■ We are convinced that the liquidation of the property of the old corporation should not be denied capital gains treatment. The method of liquidation here used did not bring the taxpayers within the capital asset exclusion of section 117(a) (1) (A) of the Internal Revenue Code of 1939. The pipe was not property held by the taxpayers primarily for sale to customers in the ordinary course of their trade or business.

### Promotional Expense Issue

In 1944 Louis Greenspon, in his own name and with his own funds, purchased a farm near St. Louis. He made his home at the farm during all of the period here involved. Louis found it difficult for his corporations engaged in the industrial pipe business to compete with large steel companies by using conventional promotional techniques. He conceived and executed the idea of creating a unique horticultural show place at his farm. He entertained potential customers there. Thus he was able to visit leisurely with his customers in pleasant surroundings and create good will for his product, and his undisputed testimony is that substantial benefits thereby ac-

crued to his corporations. Gifts of produce from the farm, such as fruits and jellies, were made to customers as well as to personal guests.

Part of the cost of creating and maintaining the horticultural show place on the farm was charged to Joseph Greenspon's Son Pipe Corporation in 1946 and to Louis Greenspon, Inc., in 1947, 1948, and 1949. Items charged the corporations included farm implements, machinery, fertilizer, insecticides, plants, shrubbery, and farm labor expense. Louis decided which expenses should be paid by the corporations. He individually paid more of the beautification project expenses than did the corporations. There is evidence to show that Louis entertained customers at his farm, but the record is indefinite as to the time and the number of customers and occasions involved. Louis also used the farm as his home and entertained relatives and friends there, the extent of such entertainment likewise not being set out.

■ The Tax Court correctly holds that the burden is upon the taxpayers to show that the expenses paid by the corporations were ordinary and necessary business expenses. The Tax Court then states:

"* * * We do not think that burden is met by showing that, periodically, business associates, or potential customers, were entertained at the farm. This is nothing more than the usual practice in the business community; corporate officers often entertain as guests the clients or customers of their corporations. The expenses incurred in such entertainment are not usually business expenses of the corporations. In certain circumstances, they may be. * * *"

The Tax Court then quotes with approval from Reginald Denny, 33 B.T.A. 738, 744, language to the effect that very clear evidence is required before any part of the cost of entertainment in the taxpayer's own home can be regarded as business expenses, and then continues:

"Of concern also is the fact that here we have a corporation taking deductions for expenditures on the private home of its dominant stockholder and chief executive officer. In such circumstances, the proof should be very clear and very certain that the expenses charged to the corporation were legitimate business expenses of the corporation. Otherwise, the opportunity for abuse would be great. We find no such evidence in this record. To the contrary, from all the evidence, we are convinced that the farm was primarily Louis Greenspon's home, and the use made of it to entertain business guests was incidental. Cf. Ned Wayburn, 32 B.T.A. 813."

 We believe that the foregoing conclusion of the Tax Court is a permissible one. While the record clearly shows some entertainment of prospective customers, it is very meager on the frequency and extent of such entertainment. It should be noted that no evidence as to the cost of food or beverage or other direct expense for the entertainment of customers has been introduced, and no claim has been made for the allowance of such expenses. The farm was the home of Louis Greenspon. Personal, family, and living expenses, such as the expense of maintaining a home, are not deductible. Section 24(a), Internal Revenue Code of 1939, 26 U.S.C. § 24(a). The Tax Court further states:

"However, even if there were proof in the record of the extent to which the farm was used to entertain business guests, we could not allow deductions of the particular expenses which have been charged to the corporation here. We think that it is too remote and too extraordinary to classify expenditures for farm tools, fertilizers, shrubbery, etc., as promotional expenses or as entertainment expenses. Nor are we able to accept the contention that these expenses are justified because the farm was developed as a sort of horticultural showplace to impress potential customers. The relationship between the aesthetic stimulation of a potential customer from the view of an unusual array of shrubbery and flowers and his order for pipe is much too oblique."

The record does not compel a conclusion that the horticultural features of the farm overwhelmed the potential customers. The farthest that the evidence goes in this respect is that several of the customers were interested in horticultural objects and oddities to some extent. From all that appears in the record it is not improbable that the customers would have visited Louis at his home if only the conventional type of entertainment was provided.

 The Tax Court in the quotation last above stated that the farm expenses were extraordinary. An allowance for deductions from gross income does not turn on general equitable considerations. Deductions depend upon legislative grace and are allowable only to the extent authorized by statute. Deputy v. du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607. Louis Greenspon contends that the farm expenses, hereinabove described, were deductible by the corporations under section 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C. § 23(a) (1) (A), which provides for the deduction from net income of "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." The burden is on the taxpayer to establish that the expenses are both necessary and ordinary. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Deputy v. du Pont, supra; Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171. In the cases just cited [290 U.S. 111, 54 S.Ct. 9], "necessary" has been defined as "appropriate and helpful." If it were to be conceded that the expenses here incurred were necessary in the sense that they were helpful to the taxpayers' business,

it would still be necessary to prove such expenses were ordinary. In Welch v. Helvering, supra, the taxpayer had been secretary of a grain purchasing corporation which was adjudged bankrupt. Thereafter, taxpayer individually entered the grain business and paid debts of the bankrupt corporation to gain the good will and business of former customers of the bankrupt company. The Court found such payments were necessary, but that such payments were not ordinary, stating, 290 U.S. at pages 114–115, 54 S.Ct. at page 9:

"* * * we should have to say that payment in such circumstances, instead of being ordinary is in a high degree extraordinary. There is nothing ordinary in the stimulus evoking it, and none in the response. Here, indeed, as so often in other branches of the law, the decisive distinctions are those of degree and not of kind. One struggles in vain for any verbal formula that will supply a ready touchstone. The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle.

"* * * Unless we can say from facts within our knowledge that these are ordinary and necessary expenses according to the ways of conduct and the forms of speech prevailing in the business world, the tax must be confirmed. But nothing told us by this record or within the sphere of our judicial notice permits us to give that extension to what is ordinary and necessary. Indeed, to do so would open the door to many bizarre analogies. * * *"

At page 116 of 290 U.S., at page 9 of 54 S.Ct., the Court clearly recognizes that difficult fact questions are presented by cases of this type, and cites in a footnote illustrative cases which the Court states it is futile to attempt to reconcile. In the du Pont case, supra, the taxpayer incurred carrying charges in connection with providing stock for purchase by junior executives. The Court found such expense was necessary but was not ordinary, stating in part, 308 U.S. at page 495, 60 S.Ct. at page 367:

"* * * Ordinary has the connotation of normal, usual, or customary. To be sure, an expense may be ordinary though it happen but once in the taxpayer's lifetime. Cf. Kornhauser v. United States, supra [276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505]. Yet the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved. * * *"

In Byers v. Commissioner, 8 Cir., 199 F. 2d 273, at page 275, this court thus states the applicable test:

"* * * The test of any deduction made as ordinary and necessary expenses in carrying on a trade or business is its normalcy and soundness as business expenditure, in both nature and amount, by general commercial standards, in practical application to the specific situation. * * *"

When the law above set out is applied to the facts in the cases before us, we are satisfied that the Tax Court's finding that the farm expenses paid by the corporations were not ordinary and necessary business expenses is backed by adequate evidentiary support. Louis Greenspon has made no showing that the creation of a horticultural show place by a corporation at the home of its principal officer and stockholder is such an expense as is ordinarily incurred in promoting a corporate business. We find no cases authorizing the deduction of promotional expense which resulted in enhancing the value of the taxpayer's home. An allowance of this type would open the door to many questionable deductions. Such a deduction should be allowed, if at all, only upon a clear showing that an item of necessary and ordinary business expense has been proved. Deductions in some cases have been allowed for expense of food or beverage used in a corporate officer's home to entertain business guests, but, as heretofore stated, no such expenses are here claimed.

The Tax Court held that the amount of farm expense here paid by the corporations constituted income to Louis Greenspon personally, being in the nature of a corporate distribution. Such holding was right. Sections 115 and 22(a), Internal Revenue Code of 1939, 26 U.S.C. §§ 115, 22(a); Byers v. Commissioner, supra; 58th St. Plaza Theatre v. Commissioner, 2 Cir., 195 F.2d 724, 725.

Since we are of the opinion that no error was committed by the Tax Court in determining that the farm expenses paid by the corporations were not ordinary and necessary business expenses, it was proper for the Tax Court to treat such payments made by the corporations as constructive dividends to Louis Greenspon.

The decision of the Tax Court on the promotional expense issue is affirmed and the decision of the Tax Court on the capital gains issue is reversed.