SIMONSEN INDUSTRIES, INC., ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 55983, 55984. Filed June 12, 1956.

*Philip D. Caloger, Esq.,* for petitioners.
*Andrew Kopperud, Jr., Esq.,* for respondent.

---

[1] Docket No. 55984, Edward H. Simonsen and Ethel G. Simonsen, is consolidated with Docket No. 55983, Simonsen Industries, Inc.

OPINION.

HARRON, *Judge:* The issue presented is whether gains realized in the taxable years 1950 and 1951 from the sales of wire by the Simonsen Wire Syndicate, of which petitioners were members, are entitled to receive capital gains treatment, as petitioners contend, or are taxable as ordinary income under sections 22 (a), 182 (c), and 183 (a), 1939 Code, as the Commissioner has determined.

The respondent contends that the merchandise which is in question, music wire or piano wire or both, is property which is excluded from the definition of capital assets set forth in section 117 (a) (1) (A) of the 1939 Code,[2] for two reasons: First, because it was "property of a kind which would properly be included in inventory of the taxpayer if on hand at the close of the taxable year"; and second, because it was property held by the syndicate primarily for sale to customers in the ordinary course of business. Respondent cites *Morris W. Zack*, 25 T. C. 676, on appeal C. A. 6.

Petitioners contend that the syndicate held the merchandise "as a capital asset for disposition at a gain, if possible, and not as stock in trade properly inventoried and held primarily for sale to customers in the ordinary course of a trade or business." The cases cited by petitioners are set forth in the margin.[3]

Except for making the assertion as set forth in the above quotation that the wire was not held "as stock in trade properly inventoried," petitioners, on brief, present no argument on the question of whether

---

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

(A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

[3] Cases cited by petitioners: *Greenspon* v. *Commissioner*, 229 F. 2d 947; *Ross* v. *Commissioner*, 227 F. 2d 265; *Consolidated Naval Stores Company* v. *Fahs*, 227 F. 2d 923; *Chandler* v. *United States*, 226 F. 2d 403; *Smith* v. *Dunn*, 224 F. 2d 353; *Goldberg* v. *Commissioner*, 223 F. 2d 709; *Dillon* v. *Commissioner*, 213 F. 2d 218; *McGah* v. *Commissioner*, 210 F. 2d 769; *Victory Housing No. 2, Inc.* v. *Commissioner*, 205 F. 2d 371.

the wire is "property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year." Such property is specifically excluded from the statutory definition of capital assets by subsection (A) of section 117 (a) (1), and if the merchandise which is involved under the issue before us is property of a kind which would be properly included in inventory, petitioners must fail at the outset.

"In order that the petitioners may take advantage of the capital asset basis of taxation established by section 117, the merchandise in question must not come within the classes of property specifically excluded therefrom by the statute." *Harry Dunitz*, 7 T. C. 672, 684, affd. 167 F. 2d 223. Also, the Commissioner having determined that the merchandise was not a capital asset, the petitioners have the burden of overcoming the prima facie correctness of the Commissioner's determination. Their burden of proof under the issue presented requires proving that the merchandise does not come within a class of property specifically excluded from capital assets in the statutory definition.

The petitioners decided not to call the accountant for the syndicate during the trial of these cases although he was present during the trial. They have not made any effort to establish that the music wire was not property of a kind which would properly be included in the inventory of the syndicate if on hand at the close of the taxable year. The syndicate had music wire on hand at the end of each of the years 1946 through 1951. During the trial, counsel for petitioners recognized that at the end of each year it was necessary to determine how much wire was left at the end of the year "because otherwise you could not determine what you sold in terms of inventory." Furthermore, the parties have stipulated that, "The Syndicate determined its gross profit from sales in each of the years 1946 to 1951, inclusive, by use of inventories. * * * A statement of the inventory reported at December 31, 1949, is typical of the inventories involved * * *." The evidence shows (Exhibit 13–M) a typical inventory of the syndicate taken at the end of a year which showed the numbers of pounds of wire of different sizes on hand, cost per pound, and value. In the income tax return of the syndicate for 1949, the return was prepared on an accrual and on an inventory basis, and the syndicate valued its inventory at cost or market, whichever was lower. On the record before us, we must and do find that the wire was stock in trade of the syndicate and that the stock on hand at the close of each year was properly included in the syndicate's inventory.

It is clear that beginning with the year 1946, through 1949, the syndicate reported income by use of the inventory method; it computed the cost of goods sold and gross profit from sales in each year by the use of inventories. It adopted a method of accounting which involved the use of inventories.

In its returns for 1950 and 1951, however, the syndicate did not show how it computed its gross profit from sales in each year. The returns for 1950 and 1951 are almost blank returns in which, on page 1, every line is blank except line 28, "net long-term capital gain (or loss)," on which line net long-term capital gain was reported, $86,-885.86 for 1950, and $69,463.34 for 1951. However, the petitioners, by their stipulation, above quoted, admit that the syndicate determined gross profits from sales in 1950 and 1951 by use of inventories. They do not contend that they changed their method of accounting for 1950 and 1951. If they wished to do so, they would have to obtain the consent of the Commissioner. See Regs. 111, sec. 29.41–2; *Pacific Vegetable Oil Corporation*, 26 T. C. 1. The returns filed by the syndicate for 1950 and 1951 are obviously incomplete returns through which the syndicate made an attempt to obtain capital gains treatment for the gains realized in those years which were, incidentally, the first years in which gains were realized; losses were sustained in each of the years 1946 through 1949.

Since the merchandise in question was property of the syndicate which was properly included in its inventory, the merchandise in question comes within the scope of one of the statutory exceptions to the definition of capital assets.

The above conclusion disposes of the issue in respondent's favor. But we also conclude that the wire was held by the syndicate primarily for sale to its customers in the ordinary course of its business.

The syndicate was organized for the purpose of marketing music wire. Each member of the syndicate contributed funds to purchase the merchandise. In 1946, it purchased 57 different lots of wire in 37 different sizes. The wire was acquired with the sole and exclusive purpose of reselling it as soon as possible. The wire did not come to the syndicate as a capital asset. Cf. *Louis Greenspon v. Commissioner*, 229 F. 2d 947, reversing in part 23 T. C. 138. The wire was sold to many different purchasers and there were 973 separate sales during the years 1946 to 1951, inclusive; there were 252 sales in 1950 and 163 sales in 1951. Total sales in 1950 and 1951 were in the amounts of $131,538.59 and $95,418.23, respectively.

The returns of the syndicate for 1946 to 1949, inclusive, show the operation of a business as a wire jobber, and the losses were reported as ordinary losses from the operation of a business. The syndicate maintained a set of ordinary business books, and the only business functions it did not perform were carried on for it by Simonsen Metal Products Company which was paid for such services.

The syndicate had no business other than the purchase and sale of the wire, and it paid salaries and wages, rent, sales expenses, insurance, and other expenses. To the extent that there are facts in the record, it is clear that there was sales activity. The wire could not

sell itself. On the point of sales activity there is almost no evidence other than the facts about numbers and amounts of sales. Failure of proof is involved here. We cannot hold on the evidence before us that the wire was ever held passively.

The entire record in this proceeding establishes that the syndicate operated in the typical manner of a business. The wire was purchased with the sole purpose of reselling it as soon as possible. There was frequency and continuity of sales. Sales transactions were in excess of 100 sales a year, for 6 consecutive years. There was, as far as the record shows, all of the normal sales activity of any business, and disposal of the merchandise involved necessarily required sales activity in order to close 973 different sales to a long list of purchasers.

It is held that Simonsen Wire Syndicate held wire primarily for sale to customers in the ordinary course of its business; the wire, therefore, is not a capital asset. Sec. 117 (a) (1) (A); *Morris W. Zack, supra; J. Roland Brady*, 25 T. C. 682.

Ordinary income of the syndicate is ordinary income of the members of the syndicate. Secs. 182 (c) and 183 (a), 1939 Code. *Morris W. Zack, supra.*

The cases cited by petitioners are not controlling. On their respective facts they are distinguishable.

*Decisions will be entered for the respondent.*