T.C. Memo. 2001-9

UNITED STATES TAX COURT

WSB LIQUIDATING CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12891-99.                    Filed January 19, 2001.

<u>James P. Dalle Pazze</u>, for petitioner.

<u>Gerald A. Thorpe</u> and <u>Jack T. Anagnostis</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income tax, and accuracy-related penalties, as follows:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|------------------------|
| 1993 | $11,805 | $1,915 |
| 1994 | 13,511 | 1,554 |
| 1995 | 14,307 | 1,597 |

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner is a dissolved Delaware corporation engaged in wrapping up its business affairs. Petitioner was originally named Walter S. Bandurski, Inc. In 1997 Walter S. Bandurski, Inc., sold substantially all of its assets and changed its name to WSB Liquidating Corp. WSB Liquidating Corp. was liquidated and dissolved in 1998. Delaware law requires a dissolved corporation to be continued as a corporate body for at least 3 years from the date of dissolution, for the purpose of prosecuting and defending suits and engaging in other activities to wrap up its affairs. See Del. Code Ann. tit. 8, sec. 278 (1991). The notice of deficiency in the instant case was issued, and the petition was filed, in 1999, within 3 years of dissolution, giving us jurisdiction. See Bared & Cobo Co., Inc. v. Commissioner, 77 T.C. 1194 (1981). Hereinafter, references to petitioner are to WSB Liquidating Corp. or Walter S. Bandurski, Inc.

Following concessions by respondent, we must decide the following: (1) Whether petitioner may deduct certain payments made to Barbara Bandurski (Barbara) in 1993, 1994, and 1995 after she had stopped working for petitioner. We hold that it may not.

(2) Whether petitioner is liable for accuracy-related penalties as determined by respondent.  We hold that petitioner is liable.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  We incorporate by this reference the stipulation of facts and the attached exhibits.  At the time of filing the petition, petitioner had been dissolved.  Petitioner's principal place of business had been Wilmington, Delaware.

Barbara and Walter Bandurski (Walter) founded and incorporated petitioner in 1967.  Petitioner was engaged in the trash removal business.  Petitioner was a close corporation under Delaware law and was managed directly by its stockholders.[1]

Walter and Barbara were married in 1956.  They both worked for petitioner.  From 1967 until 1983 or 1984, Barbara essentially ran the office; she worked full time for petitioner as office manager, bookkeeper, and corporate secretary.  Barbara had a good rapport with customers; in general customers preferred dealing with her rather than Walter.

Walter and Barbara were divorced in August of 1984.  Beginning in 1983 or 1984, Barbara's work for petitioner was less than full time; generally she appeared for work fewer than 5 days per week.  Also in 1984, an unrelated employee replaced Barbara

---

[1] However, petitioner was not an S corporation as defined in sec. 1361(a).

as office manager and corporate secretary and eventually took over most of Barbara's duties.  By the late 1980's, Barbara would typically work 2 to 3 days per week.  She continued to receive a weekly paycheck from petitioner during the period from 1983 to 1989, in amounts ranging from $225 per week in 1983 to $375 per week in 1989.

There was tension between Barbara and Walter after their divorce that was apparent to other employees of petitioner.  The tension grew during the late 1980's, causing some disruption in petitioner's office.

Effective May 1, 1989, Barbara agreed to retire from petitioner and rendered no further services after that date.  Also on that date, Barbara executed two agreements:  (1) An agreement between herself and petitioner entitled "Pension Agreement" (Pension Agreement); and (2) a "Stipulation, Agreement and Order" between herself and Walter (Settlement Agreement).  The Settlement Agreement concerned the settlement of the respective rights and obligations of Barbara and Walter following their divorce; it was captioned to reflect their divorce proceedings and also signed by a judge of the Family Court of the State of Delaware.  The Settlement Agreement made specific reference to, and attached a copy of, the Pension Agreement.

The Pension Agreement, executed by Walter on behalf of petitioner, provided in relevant part as follows:

THIS AGREEMENT is made this 1st day of May, 1989 between WALTER S. BANDURSKI, INC. (the "Company"), a Delaware corporation, and BARBARA BANDURSKI (the "Employee").

<u>BACKGROUND</u>

The Employee is presently rendering services to the Company under a contractual arrangement. For many years past, however, the Employee served the Company loyally as an officer and director. During many of those years, the Employee, in order to assist the Company in its growth, accepted compensation at a rate substantially less than her services would have commanded on the open market.

In the judgment of the directors, it is advisable and in the interest of the Company that the Employee's past service be appropriately compensated in the form of a retirement pension.

INTENDING TO BE LEGALLY BOUND, THE PARTIES AGREE AS FOLLOWS:

1. Upon the Employee's retirement from fulltime service with the Company on the 1st day of May, 1989, the Company shall pay to the Employee the sum of Three Hundred Seventy-Five Dollars ($375.00) per week for life.

As part of the Pension Agreement, petitioner also agreed not to sell a substantial portion of its assets to, nor to merge into, reorganize with, or permit its business activities to be assumed by, any other company or organization unless the latter assumed petitioner's duties and obligations under the Pension Agreement. The Pension Agreement further provided for an annual adjustment of the payments thereunder to account for inflation.

The Settlement Agreement, executed by Walter (individually), Barbara, and a family court judge, recited their marriage,

divorce, and the intent of the parties thereto "to settle their respective rights and obligations against and to one another". After providing for the division of the parties' real and personal property, the Settlement Agreement addressed "businesses" in which "The parties acknowledge that Husband and/or Wife have an interest", including petitioner. The Settlement Agreement provided that Walter would transfer to Barbara one-half of his holdings of 80 percent of the outstanding stock of petitioner, subject to Barbara's agreement to vote the stock as requested by Walter.[2] The Settlement Agreement further provided that Walter was prohibited from transferring any assets of petitioner except in the ordinary course of business to a bona fide purchaser for value. In addition, the Settlement Agreement made specific reference to the Pension Agreement, as follows:

> (e) Walter S. Bandurski, Inc. has previously entered into a Non-Qualified Pension Agreement with Wife for past services, a copy of which is attached hereto as Exhibit "C". The Pension Agreement provides Wife with a payment of $375.00 per week. Husband further agrees that the company shall provide Wife with the use of two automobiles of her choosing, together with reasonable and periodic replacements thereof no less than every three (3) years and also provide insurance on such automobiles, maintenance and gasoline and shall indemnify wife and pay for any increase in Federal or State income taxes resulting to her as a result of the provisions regarding such automobiles. Husband further agrees that the company shall provide

---

[2] In this regard, the Settlement Agreement further provided that Walter's voting requests had to be for a valid business purpose, with any disagreements on this point to be submitted to arbitration.

Wife with health insurance, as presently established
and in conformity with the same health insurance
provided to Husband.  Such benefits shall continue
until the sale of Walter S. Bandurski, Inc. to a third
party bona fide purchaser.  So long as Wife receives
her pension payment and benefits as herein set forth,
Wife waives her right to alimony pursuant to 13 Del. C.
§1512(d).  Upon the sale of Walter S. Bandurski, Inc.
and the termination of Wife's pension payment and the
other benefits provided herein, the parties shall
attempt to agree on Wife's entitlement to alimony, if
any, and upon their failure to agree, the matter shall
be submitted to the Family Court for a determination.

Husband further agrees to personally
guarantee Wife's pension payment during Wife's
entitlement to such pension payment and agrees that any
increase in Husband's salary from its present amount of
$1,000.00 per week or upon Husband receiving any other
benefits such as stock, bonus or pension amounts that
Wife shall receive a proportionate increase in her
pension payment so that the parties continue to draw
benefits at the same ratio as presently established
between Husband's salary of $1,000.00 per week and
Wife's salary of $375.00 per week.

The Settlement Agreement also provided that the reconciliation or
remarriage of Barbara and Walter would not affect its terms and
that "The property division embodied herein has been made in
recognition and as an alternative to the jurisdiction of the
Family Court of the State of Delaware to equitably divide marital
property pursuant to Delaware matrimonial and property statutes."

Petitioner issued Forms W-2, Wage and Tax Statement, to
Barbara reporting the payments at issue as employee compensation
and claimed deductions for those payments in each year at issue.
Barbara did not report any income as alimony during the years at

issue, nor did Walter claim deductions for alimony payments for taxable years 1984 through 1990 and 1994 through 1998.[3]

Petitioner had retained earnings of $1,526,835 at the end of 1993, $1,752,421 at the end of 1994, and $2,037,873 at the end of 1995. Petitioner did not pay any dividends during its existence.

In July 1997, petitioner sold substantially all of its assets to an unrelated third party. In connection with the sale, Barbara and Walter (on his own behalf and acting for petitioner) executed an agreement releasing petitioner from its obligations under the Pension Agreement. At the time of trial, Barbara and Walter were deceased.

In the notice of deficiency, respondent determined that petitioner was not entitled to deductions for wages it claimed in the amounts of $24,553 for 1993, $22,854 for 1994, and $23,499 for 1995.[4] Respondent further determined that petitioner was liable for accuracy-related penalties for underpayments due to the claimed deductions for wages.

---

[3] The record does not reveal what return positions Walter may have taken in 1991 through 1993.

[4] Respondent determined other adjustments not at issue in the instant case.

OPINION

Deductibility of Payments

This case raises the question of whether petitioner is entitled to deduct payments it made to Barbara after she ceased providing services to petitioner. Petitioner argues that the payments are deductible under section 162 as ordinary and necessary business expenses on two bases: (1) The payments were severance payments made in consideration for past services for which Barbara had been undercompensated; and (2) the payments served a business purpose by inducing Barbara's retirement because her presence in the workplace, which created tension, disrupted petitioner's operations. Respondent argues, inter alia, that the payments lacked a business purpose because in actuality they satisfied a personal obligation of a shareholder; namely, Walter's alimony obligations to Barbara. Respondent argues alternatively that the payments were not deductible because they were constructive dividends to Barbara, constituting a distribution of her share of petitioner's retained earnings attributable to her past equitable ownership interest in petitioner or the interest she acquired pursuant to the Settlement Agreement. For the reasons discussed below, we agree with respondent.

Petitioner relies heavily on the Pension Agreement to support its position that the payments to Barbara were in the

nature of severance or retirement benefits to compensate her for past services for which she was undercompensated. In order for a payment to be deductible as compensation, it must have been made with the intent to compensate. See <u>Paula Constr. Co. v. Commissioner</u>, 58 T.C. 1055, 1058 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973). This is a question of fact decided on the basis of all the facts and circumstances of the case. See <u>id.</u> at 1059. Further, we are mindful that transactions involving closely held corporations and their controlling shareholders demand close scrutiny. See <u>id.</u> at 1058. While the Pension Agreement does recite that Barbara "during many * * * years * * * accepted compensation at a rate substantially less than her services would have commanded on the open market" and that petitioner intends to "appropriately compensate" Barbara's past service with a retirement pension, there is no other evidence in the record that Barbara's compensation for past services was less than market rate or that the value of the payments provided in the Pension Agreement approximated the past undercompensation. Cf. <u>Estate of Wallace v. Commissioner</u>, 95 T.C. 525, 553-554 (1990) (taxpayer must show past undercompensation and that current payments remedy that undercompensation), affd. 965 F.2d 1038 (11th Cir. 1992); <u>Avis Indus. Corp. v. Commissioner</u>, T.C. Memo. 1995-434 (same). Indeed, the available evidence points to the contrary conclusion

that Barbara was <u>overcompensated</u> for her services, at least from 1984 until May 1, 1989, during which period her weekly salary increased significantly notwithstanding the substantial curtailment of her responsibilities and time spent at the office. In the absence of corroborating evidence, we accord little weight to the self-serving recitals in the Pension Agreement. See, e.g., <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986).

We are similarly unimpressed with petitioner's argument that its business interests were served by providing a monetary inducement for Barbara to retire because her office presence had become disruptive. If an employee interferes with the efficient operation of an employer's business, we do not find it plausible that the employer would "induce" the employee to retire with an offer of full salary for life, adjusted for inflation. The provisions connected with the termination of Barbara's services for petitioner make considerably more sense when placed in the context of Barbara's status as (1) the estranged former spouse of petitioner's controlling shareholder and (2) the probable holder of a significant equitable interest in petitioner, by virtue of her property rights arising from the marital relationship and/or her contributions as a cofounder to petitioner's success.

This is not to suggest that the characterization of the payments by petitioner to Barbara is based on mere speculation. We believe the Settlement Agreement, which is clearly

interdependent with the Pension Agreement, makes the character of the payments clear and fully supports respondent's contention that the payments functioned as alimony or as a constructive dividend to Barbara. Although petitioner argues that the Pension Agreement and the Settlement Agreement are independent and separate agreements, the record contradicts this claim. Both agreements were executed on the same day; the Settlement Agreement makes specific reference to, and attaches as an exhibit, the Pension Agreement. More significantly, the Settlement Agreement modifies and supplements the terms of the Pension Agreement, in one instance providing for a modification of the amount of the payments (in the event that Walter's salary or other benefits from petitioner increased) and in another supplementing the Pension Agreement's terms (by providing for Walter's personal guaranty of petitioner's obligation in the Pension Agreement to make the payments). It also bears mentioning that the Settlement Agreement effectively imposed obligations on petitioner, notwithstanding the fact that petitioner was not a party to the agreement. The Settlement Agreement does so by having petitioner's controlling shareholders "agree" that the payments under the Pension Agreement will be increased in certain circumstances. Obviously, the Settlement Agreement contemplated that petitioner's shareholders would use their controlling positions to effect petitioner's implementation

of any modifications in the payments mandated outside of the Pension Agreement's terms. We therefore reject petitioner's claim that the Pension and Settlement Agreements were separate and independent. In light of their contemporaneous execution and interrelated terms, we find that both the Pension Agreement and the Settlement Agreement governed the payments at issue in this case and both are therefore relevant in ascertaining the nature of the payments.

The Settlement Agreement by its terms constituted a settlement of Barbara's and Walter's "respective rights and obligations against and to one another" in connection with their marriage and "a partition of all marital property". The Settlement Agreement acknowledges that "Husband and/or Wife have an interest" in petitioner and contains a detailed disposition thereof. The transfer to Barbara of one-half of Walter's 80-percent stock interest in petitioner is required. The Settlement Agreement then acknowledges petitioner's obligation to make payments to Barbara under the Pension Agreement and in the same section obligates Walter to cause petitioner to provide Barbara certain additional "benefits" including the use of two automobiles of her choosing, together with fuel, maintenance, and payment of Barbara's income tax liability arising from receipt of the foregoing, as well as health insurance comparable to that

provided to Walter.[5]  The Settlement Agreement then provides with

respect to the pension payment and benefits as follows:

> So long as Wife receives her pension payment and
> benefits as herein set forth, Wife waives her right to
> alimony pursuant to 13 Del. C. §1512(d).  Upon the sale
> of Walter S. Bandurski, Inc. and the termination of
> Wife's pension payment and the other benefits provided
> herein, the parties shall attempt to agree on Wife's
> entitlement to alimony, if any, and upon their failure
> to agree, the matter shall be submitted to the Family
> Court for a determination.

On the basis of these provisions, and the fact that the

Settlement Agreement by its terms was intended to settle Walter

and Barbara's "respective rights and obligations against and to

one another", we conclude that the payments at issue satisfied

Barbara's rights to alimony and relieved Walter of an obligation

to make alimony payments.  Barbara waived her right to alimony

for so long as the payments under the Pension Agreement

continued.  Petitioner argues that Barbara's waiver of her

alimony rights was made in exchange for various benefits she

received under the Settlement Agreement other than the payments

under the Pension Agreement--e.g., exclusive occupancy of the

---

[5] It is not clear from the record whether the amounts petitioner reported as compensation to Barbara on Forms W-2 and claimed as wages deductions for the years in issue consisted of (i) the weekly $375 payments provided for in the Pension Agreement (as adjusted for inflation) or (ii) the foregoing plus the "benefits" (automobile use, health insurance) provided for in the Settlement Agreement.  As respondent's determination covered a specified figure in each year, and the parties have not addressed this possible distinction, we do not consider it further.

marital home and divisions of various marital property. However, the language of the Settlement Agreement belies petitioner's position; Barbara waives her rights to alimony in exchange for the "pension payment and benefits as herein set forth" and in context these "benefits" refer to the health insurance and automobile fringe benefits that are outlined immediately before.

To the extent the payments relieved Walter of his obligation to pay alimony, they are nondeductible by petitioner. A corporation's payment of its shareholder's personal expense or obligation is not deductible by the corporation. See Greenspon v. Commissioner, 229 F.2d 947 (8th Cir. 1956), affg. in part and revg. in part 23 T.C. 138 (1954); Enoch v. Commissioner, 57 T.C. 781 (1972); American Properties, Inc. v. Commissioner, 28 T.C. 1100 (1957), affd. per curiam 262 F.2d 150 (9th Cir. 1958). This Court has found in circumstances similar to the present ones that payments made by a closely held corporation to the former spouse of a controlling shareholder and claimed as deductible compensation or other business expense were disguised alimony or part of a property settlement and therefore nondeductible personal expenditures of the shareholder. See J.B.S. Enters., Inc. v. Commissioner, T.C. Memo. 1991-254; Greenwood v. Commissioner, T.C. Memo. 1989-368; Frankland Racing Equip., Inc. v. Commissioner, T.C. Memo. 1987-210. These cases concerned situations where the shareholder's spouse had at no time rendered

services to the corporation. Here, the spouse provided past services to the corporation. Given the particular facts and circumstances of this case, however, we do not think Barbara's prior services afford a basis for distinguishing the results in the prior cases. We reach this conclusion because of the absence of any persuasive evidence that Barbara was undercompensated for her services and the provisions of the Settlement Agreement in which Barbara waives her right to alimony so long as petitioner makes the payments to her that are at issue. The contention that these payments served primarily as disguised alimony is amply supported in the record.

Respondent argues in the alternative that the payments were constructive dividends to Barbara, representing a distribution of earnings to which she was entitled by virtue of her past equitable interest in petitioner or her stock interest acquired as a result of the Settlement Agreement. We are satisfied that Barbara possessed a significant ownership interest in petitioner when the payments in issue were made. The Settlement Agreement expressly recited that Barbara "[had] an interest in" petitioner and that the agreement was intended to be a "property division * * * as an alternative to the jurisdiction of the Family Court * * * to equitably divide property pursuant to" State law. As part of the disposition of Barbara's "interest" in petitioner, the Settlement Agreement provided for Walter's transfer to Barbara of

one-half of his stock interest in petitioner and acknowledged the "pension" payments from petitioner to Barbara. Clearly, the transfer of the stock to Barbara was in consideration of her ownership interest in petitioner. However, in light of the facts that petitioner had substantial retained earnings and never paid dividends, that Barbara provided no services to petitioner in the years petitioner made the payments, and that petitioner has not proved that Barbara was undercompensated in prior years, it is probable that some portion of the payments constituted a distribution of earnings to Barbara. Nevertheless, it is not necessary for us to decide what portion of the payments constituted disguised alimony and what portion constituted a distribution of earnings; in either event, they would not be deductible by petitioner.[6]

Accuracy-Related Penalties

The remaining issue is whether petitioner is liable for accuracy-related penalties under section 6662(a) as determined by respondent. Respondent determined that the portion of

---

[6] Respondent also argues that the deductions are limited by sec. 404(a). In general, sec. 404(a) disallows deductions for certain contributions to pension, annuity, and other plans, or for compensation paid under a plan deferring the receipt of such compensation. However, sec. 404(a) permits a deduction if the contributions or compensation "would otherwise be deductible", in which case it affects the year in which deductions may be taken. Because we find that the payments at issue in the instant case are not "otherwise * * * deductible", we need not address the effect of sec. 404(a).

petitioner's underpayment attributable to the deduction of compensation was due to negligence or disregard of rules or regulations.  See sec. 6662(b)(1).  However, the penalty under section 6662(a) shall not be imposed with respect to any portion of an underpayment if there was reasonable cause for such portion and the taxpayer acted in good faith.  See sec. 6664(c)(1).

We find that petitioner's attempt to deduct personal expenses of Walter, or dividends paid to Barbara, constitutes negligence or disregard of rules or regulations.  The effort, evidenced in the drafting of the Pension Agreement, to cast the payments as compensation for services reflects an awareness of the applicable tax principles.  However, the fact that the payments to Barbara satisfied Walter's alimony obligations is abundantly clear under the Settlement Agreement.  Further, petitioner has not argued reasonable cause or offered any other argument against the application of the accuracy-related penalties.  Accordingly, we sustain respondent's determinations.

To reflect the foregoing,

Decision will be entered under Rule 155 with respect to the deficiencies, and for respondent with respect to the accuracy-related penalties.