T.C. Memo. 1995-454


UNITED STATES TAX COURT


ROBERT LEE McWILLIAMS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4651-92.                    Filed September 26, 1995.


Stevan Douglas Looney,[1] for petitioner.

T. Richard Sealy III, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, Judge:  Respondent determined deficiencies in and
additions to petitioner's Federal income taxes as follows:

_____

[1]    Petitioner was originally represented by Patricia Tucker, as
evidenced by an entry of appearance filed with the Court on Sept.
30, 1992.  Ms. Tucker's motion for leave to withdraw as counsel
was granted on Sept. 30, 1993.

| Year | Deficiency | Additions to Tax | | | |
|------|-----------|-----------------|-----------------|-----------------|-----------------|
| | | Sec. 6653(b)(1) | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6661(a) |
| 1986 | $58,761 | --- | $44,071 | [1] | $14,690 |
| 1987 | 43,247 | --- | 32,435 | [1] | 10,812 |
| 1988 | 156,393 | $117,295 | --- | --- | 39,098 |

[1] 50 percent of the interest due on the portion of the underpayment attributable to fraud.

The issues for decision are:[2] (1) Whether petitioner realized income from a corporation's payment of his personal expenses.  We hold that he did. (2) Whether petitioner understated his gross income by not including deposits to his personal bank account for tax year 1988.  We hold that he did.  (3) Whether petitioner understated his income on Schedule C and Schedule E.  We hold that he did to the extent stated herein.  (4) Whether petitioner understated his capital gain income for tax year 1988.  We hold that he did to the extent stated herein.  (5) Whether petitioner is entitled to net operating loss and/or a business credit carryforward to the years in issue.  We hold that he is not.  (6) Whether petitioner is liable for the addition to tax for negligence under section 6653(a)[3] for all the years in issue.  We hold that he is liable.  (7) Whether petitioner is liable for the addition to tax for failure to timely file his Federal tax returns for 1986 and 1987 under section 6651(a).  We hold that he is liable.  (8) Whether petitioner is liable for the

_____

[2]    Respondent has made concessions as to Schedule C expenses, schedule A expenses, and Schedule E expenses to the extent petitioner was able to substantiate the deductions.  Respondent has conceded that certain amounts asserted as conversion of funds were in fact gifts and therefore not taxable.  Respondent has conceded that the capital gain income asserted for tax year 1988 was overstated by $150,000.  Respondent has conceded that petitioner is not liable for the addition to tax for fraud.

[3]    All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

addition to tax for substantial understatement for Federal income tax under section 6661(a) for all years in issue.  We hold that he is liable.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and attached exhibits are incorporated herein by this reference.  At the time the petition herein was filed, petitioner resided in Mesquite, New Mexico.  Petitioner was married and filed joint income tax returns for all years in issue.[4]

Schedule C Business

Petitioner listed his occupation as "minister" on his tax returns.  Furthermore, he reported income and expenses on Schedule C of Forms 1040 for the years in issue attributable to the business of "ministrial and guidance center" [sic].

Petitioner's business involved providing food, shelter, and medical care to various persons in a religious communal group in exchange for payments for room, board, and trailer rentals.  The expenses claimed on Schedule C for the years in issue were as follows:

|  | 1986 | 1987 | 1988 |
|---|---|---|---|
| Insurance | $2,736 | $2,468 | $1,120 |
| Other interest | 13,142 | 13,985 | 9,524 |
| Office expense |  | 1,645 |  |
| Travel | 9,248 | 9,049 | 5,103 |
| Meals and entertainment[5] | 11,868 | 10,530 | 3,986 |
| Utilities and telephone | 12,153 | 12,340 | 12,664 |
| Guidance | 27,937 | 29,615 | 6,391 |
| Dues and publications |  |  | 341 |
| Mortgage interest |  |  | 9,645 |
| Legal and professional |  |  | 2,900 |

[4]   The statutory notice of deficiency was also addressed to "Luz Elena McWilliams".  Mrs. McWilliams is not a petitioner in this case.  She was originally indicated as a petitioner; however, she neither signed the original petition nor ratified its filing on her behalf.  Accordingly, we dismissed her for lack of jurisdiction.

[5]   This amount reflects the 20 percent disallowance for years 1987 and 1988.  Sec. 274(n).

| | | | |
|---|---|---|---|
| Education | | | 1,461 |
| Repairs | | | 15,529 |
| Supplies | | | 235 |
| Total | 77,084 | 79,632 | 68,899 |

Petitioner has substantiated $47,144, $51,007, and $38,661 of the expenses for the years 1986, 1987, and 1988, respectively. In addition, respondent has conceded that $7,767, $5,591, and $8,569 of the expenses are deductible on Schedule A of the 1986, 1987, and 1988 returns, respectively, subject to limitations (i.e., personal interest. Sec. 163(d)(6)(B)).

Relationship Between Petitioner And Gilbert

Petitioner and Dr. Alton L. Gilbert (Gilbert) met in 1968. They had a close personal relationship for many years, and a business relationship during many of those years. Gilbert and his wife were also members of petitioner's ministry for 20 years.

Twenty-First Century Corporation (TFC)

TFC was formed in 1979. Petitioner, Gilbert, and their wives owned the stock in TFC. Petitioner never contributed money or property to TFC, only services. TFC elected Subchapter S status from its inception. TFC's original business (to grow and sell pine trees) failed. Gilbert had some experience with computers so TFC entered the computer services business. TFC's computer business was sold to Technical Services, Inc., effective April 1, 1984.

Technical Services, Inc. (TSI)

TSI was incorporated on August 18, 1983. It elected subchapter S status effective January 1, 1984. TSI was also in the business of providing computer services. The principal shareholders of TSI were Gilbert and Mr. John Robbins (Robbins).

Sale Of Assets From TFC To TSI

In 1983 and 1984, TFC furnished computer services for TSI's clients. TFC and TSI attempted to form a joint venture called Systech Management to

conduct the two businesses in a single entity. However, the venture was abandoned when it became clear, early on, that it would not succeed. Instead, TSI and the shareholders of TFC entered into an agreement, effective April 1, 1984, that provided for the purchase of TFC's computer operations by TSI. Pursuant to the agreement TSI issued shares of its $100 par value stock to the shareholders of TFC including 245 shares to petitioner. Subsequently, petitioner received an additional 50 shares of stock in TSI. By May 1, 1985, petitioner owned 295 shares in TSI equal to 23.54 percent of the 1,253 shares then issued and outstanding. As of May 1, 1985, the most recent sale price of TSI stock by the company was $500 per share; the most recent sale price of the stock by an individual was $1,000 per share.

After the sale, assets remaining in TFC included two tracts of land comprising 4.589 acres (real estate), tools and equipment. The tools and equipment were used in providing maintenance and janitorial services to TSI. On March 31, 1985, TFC sold the real estate to L&A Partnership for $154,597.84.

L&A Partnership (L&A)

L&A was formed on March 25, 1985, to engage in real estate activities. Petitioner and Gilbert were equal partners in L&A during the years in issue. On April 27, 1985, L&A sold 2.546-acres of the real estate to TSI for $225,000. The purchase price consisted of cash in the amount of $40,000 and a note in the amount of $185,000.

Petitioner's Dissolution Of His Interest In TSI

On July 25, 1985, two transactions were effected leading to the elimination of petitioner's interest in TSI. The first transaction, entered into on behalf of TSI by Robbins and Gilbert (Robbins was president of TSI; Gilbert was secretary; both were directors), provided for the payment from TSI to petitioner of $90,000 in 36 monthly payments of $2,500 beginning on August 1, 1985. The stated purpose for such payments was for petitioner's services rendered as director and under the condition that petitioner was to resign

from the board of directors.[6]  Furthermore, the agreement provided that TSI would not exercise its right of first refusal as to the transfer of petitioner's stock interest to Gilbert.  The second transaction was an agreement entered into between petitioner and Gilbert.  The agreement provided for the transfer of petitioner's 295 shares in TSI to Gilbert; however, the purchase price was to be determined at a later date.  To this end the agreement provided, in relevant part:

    Whereas the value to the stock cannot be fully ascertained  at this time,
    It is agreed that:
    1. Any proceeds from the sale of the stock by Alton L.      Gilbert to a third party will, upon receipt, be delivered to      Robert L. McWilliams, his heirs, or assigns; * * *

    Petitioner's relationship with Gilbert became estranged.  In early 1988, Gilbert took a leave of absence from petitioner's group to sort things out.  On March 8, 1988, Gilbert returned to the group and executed a document purporting to transfer back to petitioner 29,500 shares (the 295 shares had split 100 to 1) of TSI stock.  The document was signed by Gilbert, it was notarized, and witnessed.  However, this time, TSI elected to exercise its right of first refusal.  Consequently, a stock purchase agreement dated May 2, 1988 (the Agreement), was entered into among petitioner, Gilbert, and Robbins as president of TSI and on behalf of TSI.[7]

    The Agreement provided that in exchange for the 29,500 shares of TSI stock, TSI would transfer to petitioner title to the 2.546-acres of real

_____

[6]    Petitioner objects to this finding of fact.  He asserts that the consideration for transfer of the TSI stock was a janitorial service contract with TFC.  Petitioner directs the Court to Joint Exhibits 32-AF and 33-AG in support thereof.  However, we find no reference in these exhibits to the stock transfer or to the consideration involved.

[7]    Gilbert did not participate in the agreement on behalf of TSI, because he was considered an interested party.  He did participate in his individual capacity.

estate previously transferred to TSI from L&A[8], and would pay to petitioner $5,000 on execution of the Agreement, $20,000 within 60 days of the execution of the agreement, and $163,803 payable in 90 monthly installments (effectively paying the mortgage on the 2.546-acres of real estate).[9] The Agreement further provided that all obligations contained in the prior agreements entered into between petitioner and Gilbert (dated July 24, 1985[10], and March 8, 1988) relating to the ownership of the TSI stock were to be considered completely satisfied and released as a result of this agreement. Petitioner did not report the income attributable to this transaction on his tax return.

Respondent issued a statutory notice of deficiency to petitioner asserting deficiencies in and additions to petitioner's Federal income tax. Respondent determined that petitioner failed to report Schedule C gross receipts, had not substantiated certain amounts of claimed Schedule C business

---

[8] Petitioner objects to this finding of fact. Petitioner contends that the title report to the tract of land does not reflect the transfer. We do not find this fact to be dispositive. As the title report provides:

> This report * * * is no way intended to warrant or guarantee the title, nor is it in any way an opinion to the title. * * * It is the intention herein only to show a list of instruments, if any, that might have been placed of record between the dates shown above * * *.

Furthermore, respondent contends and evidence presented indicates that it was a "contract of deed arrangement" (i.e., deeds were to be transferred at a later date). Accordingly, we find the provision in the agreement executed by petitioner, TSI, and Gilbert to be controlling and therefore, the real estate was transferred.

[9] Petitioner argues that L&A was the debtor on the mortgage and therefore one-half of the gain is attributable to Gilbert. However, the evidence indicates that TFC paid off L&A's note in order to secure a warranty of deed and recorded a mortgage against the warranty deed prior to the reconveyance of the property from TSI to petitioner.

[10] The agreement referred to was dated July 25, 1985; however, the discrepancy is not material.

expense deductions, was not entitled to net operating loss deductions or general business credits, had understated his Schedule E rental income, had not substantiated certain amounts of Schedule E rental expenses, realized and recognized a capital gain upon the disposition of his TSI stock, and was liable for the additions to tax for fraud and substantial understatement of Federal income tax for the years in issue. In the alternative, respondent determined that petitioner was liable for additions to tax for negligence and delinquency for failure to timely file Federal income tax returns for years 1986 and 1987.

OPINION

Before dealing with the principal issues in the instant case, we will deal with two preliminary matters. First, petitioner contends that respondent's determinations in the notice of deficiency should not be given a presumption of correctness because the determinations are arbitrary. His argument implies that because respondent has made a number of concessions, the notice of deficiency is therefore arbitrary. We find no merit to this argument. To overcome the presumption of correctness, a taxpayer must prove by a preponderance of the evidence that the deficiency was arbitrarily derived. Shriver v. Commissioner, 85 T.C. 1 (1985), affd. per order (7th Cir. 1986); Dellacroce v. Commissioner, 83 T.C. 269 (1984); Llorente v. Commissioner, 74 T.C. 260 (1980), affd. in part and revd. in part 649 F.2d 152 (2d Cir. 1981). Moreover, a determination that some part of a deficiency is erroneous does not necessarily make the deficiency notice arbitrary and shift the burden of proof to respondent. Wells v. Commissioner, T.C. Memo. 1983-788. Furthermore, before a trial in the Tax Court, both parties are required to stipulate all matters to the maximum extent possible. See U.S. Tax Court Standing Pre-Trial Order. Accordingly, we hold that the burden of proof remains with petitioner.

Second, petitioner argues that respondent is collaterally estopped from her determinations because respondent has previously approved petitioner's

1978 and 1979 Federal income tax returns under substantially the same facts and circumstances. We find this argument to be equally without merit. For one reason, as respondent correctly points out, collateral estoppel is inapposite because there was no prior "litigation". The prior proceeding was merely a settlement made at respondent's Appeals level.

Issue 1. Income from TFC's Payment of Petitioner's Personal Expenses

Respondent asserts that TFC was used to pay personal expenses on petitioner's behalf. Petitioner argues that the expenses in issue were expenses of TFC that are deductible as ordinary and necessary expenses.

Taxpayers bear the burden of proving the Commissioner is incorrect in her determinations. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Section 162(a) allows a taxpayer to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business. "In order to be deductible, business expenses generally must be the expenses of the taxpayer claiming the deduction." Gantner v. Commissioner, 91 T.C. 713, 725 (1988), affd. 905 F.2d 241 (8th Cir. 1990). Generally, it is not ordinary and necessary for a corporation to pay its shareholders' expenses and obligations. Greenspon v. Commissioner, 23 T.C. 138, 151 (1954), affd. on this issue 229 F.2d 947 (8th Cir. 1956); Justice Steel, Inc. v. Commissioner, T.C. Memo. 1980-466; Heim v. Commissioner, T.C. Memo. 1978-137. Furthermore, the payment by a corporation of the personal expenses of its shareholder generally results in a constructive dividend to the shareholder, to the extent of the corporation's earnings and profits and to the extent the corporation has no expectation of repayment. Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650 (1962); Halpern v. Commissioner, T.C. Memo. 1982-31.

Petitioner has not presented any evidence that the expenses in question were not his personal living expenses. He has not presented books and records or even bills or receipts in order for us to determine the nature of the expenses in issue. Accordingly, we hold that petitioner has failed to meet his burden of proof, and we sustain respondent's determination that the

personal expenses incurred by TFC on behalf of petitioner were income to petitioner.

## Issue 2. Unreported Income--1988

Respondent argues that petitioner failed to include as income all of the deposits to his personal account for the 1988 tax year.

Generally, the Commissioner may use a method of reconstruction that clearly reflects income. Sec. 446(b); Holland v. United States, 348 U.S. 121 (1954). And the reconstruction of income need only be reasonable in light of all surrounding facts and circumstances. Giddio v. Commissioner, 54 T.C. 1530 (1970). If the taxpayer believes the Commissioner's method of computation is unfair or inaccurate, the burden is on the taxpayer to show such unfairness or inaccuracy. DiLeo v. Commissioner, 96 T.C. 858, 871 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

The use of the bank deposits method for computing income has long been sanctioned by this Court. Clayton v. Commissioner, 102 T.C. 632, 647 (1994); DiLeo v. Commissioner, supra; Estate of Mason v. Commissioner, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977). The taxpayer bears the burden of proving that the Commissioner's determination of underreported income, computed using the bank deposits method of reconstructing income, is incorrect. DiLeo v. Commissioner, supra at 869; Parks v. Commissioner, 94 T.C. 654, 658 (1990).

Petitioner has made no arguments and has presented no evidence to satisfy his burden of proving error in respondent's determination of additional income from deposits to petitioner's personal bank account. Accordingly, we sustain respondent's determination that the deposits made to petitioner's personal bank account are income for the 1988 tax year.

## Issue 3. Schedule C and Schedule E Income

Respondent has determined that petitioner's Schedule C expenses are overstated; his Schedule E rental income is understated, and his Schedule E rental expenses are understated. Respondent has made concessions as to each

determination.  Petitioner has made no argument other than the collateral estoppel argument discussed, supra.

Accordingly, we sustain respondent's determinations adjusted for her concessions.

Issue 4. Capital Gain--1988

Respondent argues that petitioner realized capital gain income in 1988. Petitioner argues that there was no capital gain transaction attributable to the 295 shares of stock in TSI previously owned by petitioner.

Generally, cash basis taxpayers must include all items of income in the gross income for the taxable year in which actually or constructively received.  Sec. 451(a); sec. 1.451-1(a), Income Tax Regs.  "Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time".  Sec. 1.451-2(a), Income Tax Regs.  The sale of stock, other than stock in-trade of the taxpayer, is the sale of a capital asset.  Sec. 1221(1).  And the gain attributable to the sale of a capital asset results in capital gain income.  Sec. 1222.  Moreover, the gain from the sale of property is equal to the excess of the amount realized (i.e., the sum of any money received plus the fair market value of the property received; sec. 1001(b)) from the sale, over the taxpayer's adjusted basis in the property.  Sec. 1001(a).

Respondent contends that as a result of the repurchase by TSI of its stock from Gilbert in 1988 and in accordance with the Agreement and the prior agreements entered into between petitioner and Gilbert, the proceeds from the sale were payable to petitioner and therefore taxable as capital gain. Petitioner contends that since a capital transaction did not occur, the Agreement merely resulted in ordinary income to petitioner.[11]  Furthermore,

---

[11]  Although petitioner seems to be arguing that the character of the income is ordinary rather than capital, the amount he
(continued...)

petitioner contends that the 2.546 acres of land to be received by him pursuant to the Agreement was never received and, therefore, did not result in a taxable event.

Petitioner's rights to consideration for his stock in TSI were fixed in the 1988 Agreement.  Although petitioner may have negotiated the sale in the 1985 agreement, his right to receive consideration was not determined until the 1988 Agreement.  Furthermore, it is clear to us that the Agreement provides for petitioner's receipt of cash, real estate, and the assumption of liabilities in exchange for his stock interest in TSI.  Petitioner has not provided us with evidence to treat the sale otherwise.  Moreover, petitioner has offered no evidence as to his basis, if any, in the TSI stock at the time of sale.

Accordingly, we sustain respondent's determination adjusted for her concessions.

Issue 5. Net Operating Loss And Business Credit Carryforward

Respondent has disallowed the utilization of net operating loss and business credit[12] carryforwards.

A net operating loss is the excess of the deductions allowed  over the gross income.  Sec. 172(c).  A net operating loss for any taxable year may be carried back to each of the 3 taxable years preceding the taxable year of the loss and carried forward to each of the 15 taxable years following the taxable year of the loss.  Sec. 172(b).  The burden of proof is on the taxpayer to prove the fact and the amount of the loss.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Larabee v. Commissioner, T.C. Memo. 1989-298.

---

[11](...continued)
claims is includable is substantially less than the amount of capital gain income asserted by respondent.

[12]    Petitioner asserts that respondent has conceded this issue. We find no merit to this argument.  This was an issue in the notice of deficiency and has continued to be argued throughout the proceedings.

Furthermore, a tax return is merely a statement of the taxpayer's claim and does not establish the truth of the matters set forth therein. Wilkinson v. Commissioner, 71 T.C. 633 (1979).

Respondent argues that petitioner has not substantiated the amounts nor established that such carryforwards would not have been absorbed in prior years. Petitioner asserts that TFC operated at a loss in 1985 as shown on TFC's tax return. Furthermore, petitioner made an election to forgo the carryback on his 1985 individual income tax return.

Petitioner has provided us with nothing more than his individual tax returns and the corporate tax returns of TFC as proof for the net operating loss. Petitioner has not provided us with TFC's books and records, or any other means to substantiate the amount of the loss claimed. We sustain respondent's disallowance of the net operating loss deduction.

Credits are a matter of legislative grace, and petitioners have the buren of proving that they are entitled to the credit. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943); Segel v. Commissioner, 89 T.C. 816, 842 (1987). Taxpayers cannot merely rely on prior years' tax returns in which credits were claimed. Sherwood v. Commissioner, T.C. Memo. 1988-544. Section 38 provides for a credit against tax for the purchase of qualified property. To the extent such credit was not used in the tax year, it may be carried back 3 years or forward 15 years. Sec. 39. A credit carried forward to a tax year beginning after June 30, 1987, must be reduced by 35 percent. Sec. 49(c).

Respondent argues that petitioner has not substantiated the amounts nor established that such carryforwards would not have been absorbed in prior years. Petitioner further asserts that an investment tax credit flowed through from TSI's 1984 tax return to petitioner and may be offset against petitioner's tax liabilities for the years in issue.

Petitioner did not provide any invoices to support the purchase of qualified property upon which a credit could have been claimed. He did not

provide supporting books and records for purchases and sales.  And he has not provided the Court with enough information to determine whether any allowable credits would have otherwise been absorbed in the intervening years.  We find that petitioner has not met his burden of proof, and we sustain respondent.

Issue 6. Addition To Tax--Negligence

In her notice of deficiency, respondent determined that, as an alternative to fraud, petitioner was liable for additions to tax under section 6653(a)(1)(A) and (B) for 1986 and 1987, and section 6653(a)(1) for 1988.

For 1986 and 1987, section 6653(a)(1)(A) provides that if any part of the underpayment is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment.  Section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to negligence.

For 1988, section 6653(a)(1) provides that if any part of the underpayment is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment.

Negligence under section 6653(a) is a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances."  Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)).  The taxpayer has the burden of proving that the Commissioner's determination of the additions to tax under section 6653(a) is erroneous.  Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972).

Petitioner has not presented evidence to establish that he was not negligent or did not disregard rules or regulations.  Petitioner did not maintain records, as required by law, and he failed to sustain his burden of proof on the disputed issues.  Petitioner claims that his ignorance of the

1988 transaction and a purported physical illness warrants a finding that he was not negligent. We are unpersuaded. On this record, we sustain respondent's determination that petitioner is liable for the additions to tax under section 6653(a)(1)(A) and (B) for 1986 and 1987, and section 6653(a)(1) for 1988.

Issue 7. Addition to Tax--Failure to Timely File Tax Returns

Respondent has determined an addition to tax under section 6651(a) for failure to file timely Federal income tax returns for the tax years 1986 and 1987.

In the case of a failure to file an income tax return within the time prescribed by law, section 6651(a)(1) provides for an addition to tax in the amount of 5 percent of the tax required to be shown on the return for each month (or part thereof) during which such failure continues, but not to exceed 25 percent in the aggregate. See sec. 301.6651-1(a)(1), Proced. & Admin. Regs. The taxpayer is not liable for the addition to tax if the failure to file is due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1); Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985); Stovall v. Commissioner, 762 F.2d 891, 895 (11th Cir. 1985), affg. T.C. Memo. 1983-450.

Petitioner's calendar year tax return for 1986 was due on or before April 15, 1987, and his calendar year tax return for 1987 was due on or before April 15, 1988. Sec. 6072(a). The tax return for 1986 was filed on or after August 1, 1987, and the tax return for 1987 was filed on or after August 22, 1988.

Petitioner has presented no evidence that the time for filing either of the returns was properly extended. Secs. 6081(a), 6651(a)(1); sec. 1.6081-1(b), Income Tax Regs. Furthermore, petitioner has not presented evidence as to the reason the returns were filed late.

Accordingly, we conclude that petitioner has failed to carry his burden of proof on this issue, and we hold that petitioner is liable for the addition to tax under section 6651(a)(1).

Issue 8. Addition To Tax--Substantial Understatement of Income Tax

Respondent has determined an addition to tax under section 6661(a) for substantial understatement of income tax for each of the years in issue.

Section 6661(a) imposes an addition to tax on a substantial understatement of income tax. The section provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. Sec. 6661(a). The taxpayer bears the burden of proving that the Commissioner's determination as to the addition to tax under section 6661(a) is erroneous. Rule 142(a).

An understatement is substantial where it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6661(b)(1)(A). An understatement is the difference between the amount required to be shown on the return and the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501 (1989); Woods v. Commissioner, 91 T.C. 88 (1988). The section 6661 addition to tax is not applicable, however, if there was substantial authority for the taxpayer's treatment of the items in issue or if relevant facts relating to the tax treatment of those items were disclosed on the return. Sec. 6661(b)(2)(B)(i), (ii).

Neither exception applies here. Accordingly, we hold that petitioner is liable for the addition to tax under section 6661.

To reflect the foregoing,

Decision will be entered

under Rule 155.